**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs, the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BERNARDO MARTINEZ, LAMINE ZERBO and MOHAMMED KAMARA, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**MIDSPAN TELECOM CORP., INSPERITY PEO SERVICES, L.P., DANIEL ZAYAS and RICHARD GRULLARD, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Bernardo Martinez, Lamine Zerbo and Mohammed Kamara (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are former cable, Internet and telephone installation and servicing technicians who worked for Midspan Telecom Corp. ("Midspan"), Daniel Zayas ("Zayas") and Richard Grullard ("Grullard" and, together with Midspan and Zayas, the "Midspan Defendants")

and Insperity PEO Services, L.P. ("Insperity" and, together with the Midspan Defendants, the "Defendants") throughout New York City and Westchester county.

2.  For their work, Plaintiffs were paid a piece rate for each job performed, such that they did not receive the statutory minimum wage for all hours that they worked or overtime premiums for hours worked in excess of forty (40) in a given week.

3.  Although Plaintiffs received piece-rate compensation based on a schedule of jobs, that rate did not vary based on the amount of time they spent working on the job, and they did not receive wages of any kind for time spent in the warehouse, traveling between jobs and the warehouse, waiting to be assigned jobs and participating in staff meetings. Further, they were frequently not paid for all jobs they had performed.

4.  Plaintiffs bring this action to recover  minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid wages, including piece-rate payments and/or commissions, unpaid spread-of-hours premiums, and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

5.  Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management technicians working for Defendants in New York.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to

28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial portion of the events giving rise to this complaint arose in this district.

8.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

9.      Plaintiff Bernardo Martinez was, at all relevant times, an adult individual residing in Bronx County, New York.

10.      Plaintiff Lamine Zerbo was, at all relevant times, an adult individual residing in Bronx County, New York.

11.      Plaintiff Mohammed Kamara was, at all relevant times, an adult individual residing in Bronx County, New York.

12.      Throughout the relevant time period, Plaintiffs installed, disconnected and repaired cable, high-speed Internet and voice services on behalf of Defendants for Spectrum customers at various locations throughout New York City and Westchester county.

13.      Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216 (b), and their consent forms are attached hereto.

**Defendants:**

14.     Midspan Telecom Corp. ("Midspan") is an active New York Corporation with locations at 724 Garrison Avenue, Bronx, NY 10474 and 285 Route 211 West, Suite 4, Middletown, New York 10940.

15.     Insperity PEO Services, L.P. ("Insperity" and, together with Midspan, the "Corporate Defendants") is a Delaware Foreign Limited Partnership that does business in the State of New York, with principal executive offices located at 19001 Crescent Springs Drive, Kingwood, Texas 77339.

16.     Daniel Zayas ("Zayas") and Richard Grullard ("Grullard" and, together with Zayas, the "Individual Defendants") are owners, operators and managers of Midspan.

17.     The Individual Defendants maintained ownership and operational control over Midspan and managed Midspan by determining the manner in which employees were compensated, maintaining employee records and payroll, and through possessing the authority to hire and fire employees, including Plaintiffs.

18.     The Defendants jointly employed Plaintiffs and all similarly situated employees by acting in the interest of each other with respect to the employees, paying employees according to the same policies and practices, and sharing control over the employees.

19.     During the relevant time period, Defendant Insperity was a joint employer with Midspan, specifically with regards to payroll and other employment policies.

20.     Upon information and belief, Defendant Insperity is a Professional Employer Organization ("PEO") providing human resources and payroll services to the Midspan Defendants. During their respective employment periods, Plaintiffs were provided with an "Employment Agreement" from Insperity stating that Midspan and Insperity had agreed to a "'co-employment'

relationship under which Insperity would handle certain administrative responsibilities concerning [their] employment at [Midspan]" and that Plaintiffs were "at-will employee[s] of Insperity."

21.     During the relevant time period, Plaintiffs were employees of Insperity, in addition to Midspan, and received their wages in whole or in part through Insperity via payroll check or direct deposit.

22.     The Individual Defendants participated in the day-to-day operations of the Midspan and acted intentionally in their direction and control of Plaintiffs and Midspan's other similarly situated employees, and are each an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

23.     At all relevant times, the Corporate Defendants have been and continues to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

24.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs, the opt-in plaintiffs, and the Class Members within the meaning of the FLSA, 29 U.S.C. § 203(d).

25.     At all relevant times, Plaintiffs, the opt-in plaintiffs, and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

26.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

27.     At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

28.     All actions and omissions described in this complaint were made by Defendants

directly or through their supervisory employees and agents.

## FLSA COLLECTIVE ACTION ALLEGATIONS

29.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First and Second

Causes of Action as a collective action under the FLSA on behalf of themselves and the following

collective:

> All persons employed by Defendants at any time since November
> 26, 2016 and through the entry of judgment in this case (the
> "Collective Action Period") who worked as technicians or in other
> positions performing installation, service and repair of cable,
> Internet and voice services (the "Collective Action Members").

30.     A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wages for all hours worked and overtime premiums for

work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiffs

and the Collective Action Members did not receive legally-required minimum wages and overtime

premium payments for all hours worked in excess of forty (40) hours per week.

31.     Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

32.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action

under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following

class:

> All persons employed by Defendants at any time since November
> 26, 2013 and through the entry of judgment in this case (the "Class
> Period") who worked as technicians or in other positions performing
> installation, service and repair of cable, Internet and voice services
> (the "Class Members").

33.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

34.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

35.    Upon information and belief, there are in excess of forty (40) Class Members.

36.    <u>Common questions of law and fact exist as to all Class Members and such questions predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members wages for all hours worked;

d.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members all piece-rate payments and/or commissions to which they were entitled;

e.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wages for all hours worked;

f.    whether Defendants failed to pay overtime wages to Plaintiffs and the Class Members

for all hours worked over forty (40) in a given week;

g.   whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours and/or split shifts;

h.   whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

i.   whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment, as required by the NYLL;

j.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

k.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

37.   Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, who worked for Defendants pursuant to their corporate policies. The Class Representatives, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked; were not paid overtime wages for all hours worked over forty (40) in a given workweek; were not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours; were not paid wages of any kind for certain hours worked, including time spent in the warehouse, traveling between jobs and the warehouse, waiting to be assigned jobs and participating in staff meetings; were not paid all piece-rate payments and/or commissions to which they were entitled; and were not provided with proper wage notice and wage statements. If Defendants are liable to the Class Representatives for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

38.     <u>The Class Representatives and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and the Class Representatives bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

39.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

40.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Business**

41.     Defendant Midspan is a cable, Internet and telephone installation and servicing company, which maintains offices in the Bronx and Middletown, New York and operates throughout New York City and Westchester, Orange and Sullivan Counties.

42.     The Individual Defendants are frequently present at Defendants' warehouse, located at 724 Garrison Avenue, Bronx, New York 10474, for staff meetings and to supervise the work being performed and take an active role in ensuring that the company is run in accordance with their procedures and policies, including employee payroll policies.

43.     Upon information and belief, the Individual Defendants are co-owners and managers of Midspan.

44.     Upon information and belief, at all times relevant, the Individual Defendants and their agents have had power over payroll and personnel decisions at Midspan, including the power to hire and fire employees, set their wages and manner of compensation, enter into agreements with Insperity and/or other payroll companies, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

45.     Plaintiff Martinez worked for Defendants as a technician from on or about September 9, 2018 through in or around July 2019 (the "Martinez Employment Period").

46.     From the start of the Martinez Employment Period to in or around spring 2019, Plaintiff Martinez typically worked five (5) days per week, from approximately 7:30 am or 8:00 am to between approximately 6:00 pm and 8:00 pm, and sometimes as late as 11:00 pm, for a total of approximately fifty to sixty (50-60) hours per week.

47.     During a staff meeting in or around spring 2019, Midspan Director of Operations Jonathan Polanco ("Polanco") announced that technicians would be scheduled to work ten (10) hours per day, four (4) days per week, for a total of forty (40) hours per week, going forward. Although Plaintiff Martinez was instructed to return to the warehouse by 5:00 pm from in or around spring 2019 through the end of the Martinez Employment Period, he frequently returned later, when he was assigned late jobs or experienced traffic on his way back to the warehouse, such that he typically worked approximately twelve (12) hours per day, and sometimes more, for a total of approximately fifty (50) hours per week.

48.     Throughout the Martinez Employment Period, Plaintiff Martinez was required to

report to Defendants' warehouse, located at 724 Garrison Avenue, Bronx, New York 10474, each morning to pick up equipment, including cable boxes, modems and routers, and a company van. Plaintiff Martinez was required to return to the warehouse after he completed his final job each day to drop off the van and return equipment and tools.

49.     Throughout the Martinez Employment Period, Plaintiff Martinez was paid on a piece-rate basis for each job that he completed, which typically ranged from approximately fifty dollars ($50.00) for a "Spectrum Single Play" installation (i.e., Internet, cable or landline telephone), to sixty-five dollars ($65.00) for a "Spectrum Triple Play" installation, which included installation of all three (3) services.

50.     Throughout the Martinez Employment Period, Plaintiff Martinez was not paid an hourly rate of any kind. Although he received compensation per job, that rate did not vary based on the amount of time that he spent working on the job, and he did not receive wages of any kind for time spent in the warehouse, traveling between jobs and the warehouse, waiting to be assigned jobs and participating in staff meetings.

51.     On several occasions, Plaintiff Martinez was not paid for a job that he performed when he made a mistake that another technician was be assigned to correct. In those situations, the technician who was called in to complete the job was paid the piece rate for the entire job, such that Martinez did not receive wages of any kind for the work that he had already performed.

52.     On several occasions, Plaintiff Martinez complained to Defendant Zayas that he was not being paid at least the statutory minimum wage for all hours that he worked. Zayas responded by informing Martinez that he "didn't work enough hours," implying that Martinez needed to complete more jobs in order to earn more money. Plaintiff Martinez additionally complained to Joshua Rivera, a dispatch employee who often handed out employees' paychecks,

11

that his paychecks were low, considering the high number of hours that he worked. Similar to Zayas, Rivera typically responded by informing Martinez that he was "not producing enough work."

53.     On numerous occasions, Plaintiff Martinez witnessed other technicians complaining to Defendants at staff meetings that they were not being paid overtime premiums when they worked in excess of forty (40) hours per week. In response to these complaints, Defendant Zayas and Polanco would frequently tell employees to "produce more work."

54.     Plaintiff Kamara worked for Defendants as a technician from in or around June 2018 through in or around July 2019 (the "Kamara Employment Period").

55.     For approximately the first three to five (3-5) months of the Kamara Employment Period, Plaintiff Kamara typically worked seven (7) days per week, from between approximately 7:00 am and 7:30 am to between approximately 8:00 pm and 10:00 pm, for a total of approximately eighty-seven to one hundred (84-90) hours per week.

56.     From in or around late summer 2018 through spring 2019, Plaintiff Kamara typically worked five to six (5-6) days per week, from between approximately 7:00 am and 7:30 am to between approximately 8:00 pm and 10:00 pm, for a total of approximately sixty to eighty (60-80) hours per week.

57.     From in or around spring 2019 through the end of the Kamara Employment Period, Plaintiff Kamara was scheduled to work four (4) days per week, ten (10) hours per day, for a total of forty (40) hours per week from that point forward. Although Plaintiff Kamara was instructed to return to the warehouse by around 5:00 pm or 6:00 pm, he frequently returned later, when he was assigned late jobs or experienced traffic, such that he frequently worked as many as twelve (12) hours per day, for a total of approximately forty to fifty (40-50) hours per week, and sometimes

more.

58.     Throughout the Kamara Employment Period, Plaintiff Kamara was required to report to Defendants' warehouse, located at 724 Garrison Avenue, Bronx, New York 10474, each morning to pick up equipment, including cable boxes, modems and routers, and a company van. Plaintiff Kamara was required to return to the warehouse after he completed his final job each day to drop off the van and return equipment and tools.

59.     Throughout the Kamara Employment Period, Plaintiff Kamara was paid on a piece-rate basis for each job that he completed, which typically ranged from approximately forty-two dollars ($42.00) to sixty dollars ($60.00) per job, depending on the specific tasks that he was required to perform.

60.     Throughout the Kamara Employment Period, Plaintiff Kamara was frequently not paid for all jobs that he completed. On average, Plaintiff Kamara estimates that there were between approximately three (3) and seven (7) jobs missing from his payment each pay period.

61.     On several occasions, Plaintiff Kamara complained to Rivera and his supervisors, Polanco and "Eddie," that he was not being paid for all jobs that he performed. Although Polanco, "Eddie" and Rivera informed him that they would "look into it," Kamara was ultimately not compensated for all of the jobs that he performed.

62.     Throughout the Kamara Employment Period, Plaintiff Kamara was not paid an hourly rate of any kind. Although he received compensation per job, that rate did not vary based on the amount of time that he spent working on the job, and he did not receive wages of any kind for time spent in the warehouse, traveling between jobs and the warehouse, waiting to be assigned jobs and participating in staff meetings.

63.     On several occasions, Plaintiff Kamara complained to Defendant Zayas, as well as

Polanco and Rivera about not receiving an hourly rate and not receiving overtime premiums when he worked in excess of forty (40) hours per week. Polanco and Rivera typically responded by informing Kamara that Midspan simply pays "per job." Although Defendant Zayas informed Plaintiff Kamara that he would "look into" the possibility of paying technicians on an hourly basis, Plaintiff Kamara was paid on a piece rate basis throughout his entire employment period with Defendants.

64.     Plaintiff Zerbo worked for Defendants as a technician from in or around July 2018 through in or around late March or early April 2019 (the "Zerbo Employment Period"). Throughout the Zerbo Employment Period, Plaintiff Zerbo primarily worked in Queens.

65.     Because Plaintiff Zerbo frequently worked in certain Queens neighborhoods in which he was routinely required to perform work in private homes, as opposed to apartments, his installation duties occasionally included climbing telephone poles to replace cables.

66.     For approximately the first two to three (2-3) months of the Zerbo Employment Period, Plaintiff Zerbo typically worked seven (7) days per week, from between approximately 7:00 am and 7:30 am to between approximately 6:00 pm and 9:00 pm, and sometimes later, for a total of approximately eighty to ninety (80-90) hours per week.

67.     Starting in or around fall 2018 through the end of the Zerbo Employment Period, Plaintiff Zerbo typically worked six (6) days per week, from between approximately 7:00 am and 7:30 am to between approximately 6:00 pm and 9:00 pm, and sometimes later, for a total of approximately seventy-two to ninety (72-90) hours per week.

68.     Approximately once per month throughout the Zerbo Employment Period, Plaintiff Zerbo worked five (5) days per week, from between approximately 7:00 am and 7:30 am to between approximately 6:00 pm and 9:00 pm, and sometimes later, for a total of approximately

sixty to seventy (60-70) hours per week.

69.     Throughout the Zerbo Employment Period, Plaintiff Zerbo was required to report to Defendants' warehouse, located at 724 Garrison Avenue, Bronx, New York 10474, each morning to pick up equipment, including cable boxes, modems and routers, and a company van. Plaintiff Zerbo was required to return to the warehouse after he completed his final job each day to drop off the van and return equipment and tools.

70.     Throughout the Zerbo Employment Period, Plaintiff Zerbo was paid on a piece-rate basis for each job that he completed, which typically ranged from approximately forty dollars to forty-five dollars ($40.00-$45.00) for a "Spectrum Single Play" installation (i.e., Internet, cable or landline telephone), fifty dollars ($50.00) for a "Spectrum Double Play" installation (i.e., installation of two of the aforementioned services) and sixty-five dollars ($65.00) for a "Spectrum Triple Play" installation, which included installation of all three (3) services.

71.     Throughout the Zerbo Employment Period, Plaintiff Zerbo was not paid an hourly rate of any kind. Although he received compensation per job, that rate did not vary based on the amount of time that he spent working on the job, and he did not receive wages of any kind for time spent in the warehouse, traveling between jobs and the warehouse, waiting to be assigned jobs and participating in staff meetings.

72.     Throughout the Zerbo Employment Period, Plaintiff Zerbo was frequently not paid for all jobs that he completed. On average, Plaintiff Zerbo estimates that there were typically two to four (2-4) jobs missing from his payment each pay period.

73.     On several occasions, Zerbo complained to Rivera that he was missing jobs from his payment. Rivera typically responded that it was because "Spectrum did not pay for the job" or because a customer had complained about the quality of the work performed, such that a supervisor

was dispatched to fix the alleged mistake. When the latter situation occurred, the supervisor who was dispatched would be paid the piece rate for the entire job, such that Zerbo did not receive wages of any kind for the work he had already performed.

74.     On one occasion in or around late fall or early winter 2018, Zerbo complained to Defendant Zayas that he was consistently missing several jobs from his payment. Zerbo later received a follow-up call from Zayas, who informed him that he "fix" the situation and have Rivera give him a check for the missing jobs. Subsequently, Zerbo received a private check signed by Zayas from Rivera for the total amount of approximately four hundred and eighty dollars ($480.00), with no breakdown or explanation of the number of jobs, or which specific jobs, the payment was meant to cover. Based on the amount that he received, it is Zerbo's belief that Defendants still owe him for numerous other jobs throughout his employment period for which he never received compensation.

75.     On one occasion, Zerbo complained to Rivera after he noticed that he was not compensated for more than ten (10) jobs that he performed. Rivera simply responded that he "doesn't care."

76.     During staff meetings, Plaintiff Zerbo frequently witnessed other technicians complaining about not receiving overtime premiums. Rivera would typically respond by informing those employees that "if we give you a job, you have to do it" or informing them that they "don't have to complain about overtime" because they should be thanking Midspan for "helping [them] to make money." Defendant Zayas would typically respond that Midspan "can't" pay overtime, without disclosing the reasons as to the company's inability to pay or referencing any exemptions to state and federal overtime requirements.

77.     During periods when Plaintiffs were waiting to be assigned jobs, they were required

to wait in their vans or the warehouse until the end of their scheduled shifts, or some other predetermined time, and were not permitted to return home. On one occasion in or around November or December 2018, when Plaintiff Zerbo went home prior to the end of his work day after being informed multiple times that there were no jobs, Polanco suspended him for approximately three (3) or four (4) days as punishment. On several occasions, Polanco sent Plaintiff Kamara home and refused to give him jobs when he left the warehouse or returned to the warehouse from the field on days when he was not assigned jobs.

78.     After approximately spring 2019, when Polanco announced that technicians were being scheduled to work ten (10) hours per day, four (4) days per week, Polanco began informing Plaintiffs and Defendants' other technicians that they were not permitted to leave the field until at least 4:00 pm.

79.     Throughout their respective employment periods, Plaintiffs were frequently unable to take uninterrupted breaks of at least thirty (30) minutes due to the high volume of work that they received. Plaintiffs were typically only able to take an uninterrupted thirty (30)-minute meal break when the work was slow.

80.     Throughout Plaintiffs' respective employment periods, Defendants did not maintain a formal timekeeping system of any kind to track the total number of hours that Plaintiffs and Midspan's other technicians worked. Although Plaintiffs were required to write down their names, truck and meter numbers and phone numbers on a sign-in sheet when they arrived at the warehouse, Defendants did not provide a means for Plaintiffs to record the times that they arrived at or left from the warehouse during the workday.

81.     Throughout their respective employment periods, Plaintiffs received jobs through a Spectrum app that was installed on their company cell phones. Although Plaintiffs were able to

use the app to indicate that they were on their way to a job, as well as the times that they started and ended a job, the app did not accurately track all hours that Plaintiffs worked, including travel time to and from jobs, time spent waiting for jobs, and time spent participating in staff meetings.

82.     Plaintiffs are aware that employees who work in the warehouse are required to clock in and out and are paid on an hourly basis. Plaintiff Martinez has had discussions with certain warehouse employees who informed him that they are not permitted to leave until the last truck is returned to the warehouse and that they enjoy staying late because it means that they will receive overtime premiums.

83.     Throughout their respective employment periods, Plaintiffs received paystubs that either showed zero (0) hours with a certain amount paid as "commission" or showed an extremely low number of hours paid at a purported "hourly" rate, which upon information and belief, was calculated by dividing the total amount paid for the certain jobs Plaintiffs worked, paid on a piece-rate basis, by a fabricated "hourly rate." The amounts contained in Plaintiffs' paychecks reflected payment only for the individual jobs that Plaintiffs performed on a piece-rate basis.

84.     At no time did Plaintiffs receive a wage notice setting forth their regular and overtime rates, any deductions taken by Defendants from their wages, or other wage information as required by the NYLL § 195.

**Defendants' Unlawful Corporate Policies**

85.     Plaintiff and the Class Members were all paid pursuant to the same corporate policies of Defendants, including paying on a piece-rate basis based on a schedule of jobs and the applicable rate for that particular job, failing to pay minimum wages, failing to pay wages of any kind for time spent in the warehouse, traveling between jobs and the warehouse, waiting to be assigned jobs and time spent participating in staff meetings, failing to pay overtime premiums for

hours worked in excess of forty (40) in a week and failing to pay spread-of-hours premiums.

86.     Plaintiffs have spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is and has been a corporate policy of Defendants which applies to all of their non-management technicians throughout the Class Period.

87.     Plaintiffs have spoken with other employees of Defendants who were similarly paid a fixed salary for all hours worked, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is and has been a corporate policy of Defendants which applies to non-management employees throughout the Class Period.

88.     Defendants' failure to pay minimum wages and overtime was a corporate policy of Defendants which applies to all non-management technicians throughout the relevant time period.

89.     Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

90.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

91.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

93.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

94.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  By failing to pay Plaintiffs and the Collective Action Members the tipped minimum wage for all hours worked, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

95.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and

continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

97. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

98. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

99. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100. Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

101. Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

**(Brought on Behalf of Plaintiffs and the Class Members)**

102.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

103.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

104.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PAY WAGES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

105.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

106.    Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiffs and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiffs all of their wages earned within the week such wages were due.

107.    Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and the Class Members, that is not otherwise authorized by law or by the employee.

108.    By withholding wages and overtime compensation from Plaintiffs, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiffs.

109.    Defendants' failure to pay Plaintiffs the applicable piece-rate payment for all jobs they performed or wages of any kind for time spent in the warehouse, traveling between jobs and the warehouse, waiting to be assigned jobs and participating in staff meetings violated NYLL §§ 191 and 193.

110.    Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, including piece-rate and/or commission payments, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

111.    Plaintiffs, on behalf of himself and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

112.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in

violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

113.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SEVENTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

114.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

115.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

116.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

117.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

118.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

119.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated

damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

    a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

    b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

    c.    An order tolling the statute of limitations;

    d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

    e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.     An award of compensatory damages as a result of Defendants' failure to pay all wages, including piece-rate and/or commission payments, to which Plaintiffs and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

i.     An award of liquidated damages for Defendants' failure to pay all wages, including piece-rate and/or commission payments, to which Plaintiffs and the Class Members are entitled, pursuant to the NYLL and supporting regulations;

j.     An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

k.     Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b.

l.     Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

m.      An award of damages arising out of the non-payment of gratuities;

n.      An award of liquidated damages arising out of the non-payment of gratuities;

o.      An award of prejudgment and post-judgment interest;

p.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.      Such other and further relief as this Court deems just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
          November 27, 2019

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of ___Midspan Telecom Corp.___, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_Benny Martinez_
Signature

_Bernardo Martinez_
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Midspan Telecom Corp. and/or its respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____
Signature

Mohammed Kamara
_____
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Midspan Telecom Corp. and/or its respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          Lamine ZERRO
Signature                            Printed Name